UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| PRESTON ALLEN, | ) | CV F 04 5897 DLB |
| | ) | |
| | ) | ORDER REGARDING PLAINTIFF'S |
| Plaintiff, | ) | SOCIAL SECURITY COMPLAINT |
| | ) | |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**BACKGROUND**

Plaintiff Preston Allen ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On December 9, 2004, the Honorable Oliver W. Wanger reassigned the case to the undersigned for all purposes.

1

## **FACTS AND PRIOR PROCEEDINGS**[2]

Plaintiff filed an application for supplemental security income on May 11, 2001[3], alleging disability since November 1, 2000, due to "spinal cord problems, cervical spine, both shoulders and arms burn, constant pain, numbness in hands, loss of grip strength in hands." AR 91-93, 96-105. After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 69-73, 75-77, 80. On August 7, 2002 and May 21, 2003[4], ALJ Daniel Heely held a hearing. AR 255-276, 277-285. On August 13, 2003, ALJ Heely found that Plaintiff was not disabled. AR 10-23. On April 30, 2004, the Appeals Council denied review. AR 4-6.

<u>Hearing Testimony</u>

On August 7, 2002, ALJ Heely held a hearing in Stockton, California. AR 255. Plaintiff appeared along with his attorney, Jeffrey Milam. AR 255.

Plaintiff testified that he was born on November 29, 1953, and received his GED. AR 258. He does not have a driver's license and has not driven since the date he got hurt, April 10, 1998. AR 259. He relies on family and friends for transportation. AR 260.

He has not worked since before his accident. AR 261. He explained that he cannot work now because of severe pain in his neck, arms and hands. AR 262. He takes medications for the pain that help "somewhat," but cause nausea, dizziness and sleepiness. AR 265. He has told his doctors about the side effects but they told him there was nothing they could do about it. AR 266. The side effects are worse for a couple of hours after taking the medication, but bother him all the time. AR 272. He has lost weight. AR 272.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[3] Plaintiff filed a previous application for supplemental security income in 1999. AR 33. ALJ James N. Baker denied the application on November 13, 2000. AR 33-42. On January 30, 2003, the Appeals Council denied review. AR 49-50.

[4] At the time of Plaintiff's first hearing, a request for review regarding his first application was pending before the Appeals Council. AR 279. ALJ Heely held a subsequent hearing on May 21, 2003, to update the record. AR 281.

Although he takes medication for depression, he has not received any separate mental health treatment. AR 266. He has problems with his memory. AR 273.

He estimated that he could sit for one to two hours at a time and walk about one half hour to one hour at a time. AR 267. It "hurts like heck" when he carries a gallon of milk. AR 268. He is unable to wash his own hair but can shave and shower, although it is very painful. AR 269. He cannot make his own bed and has help preparing his meals. AR 269. He hasn't been to a store in over a year because it hurts to walk and move his arms back and forth. AR 269. He watches television and reads for about eight to ten hours a day. AR 270.

ALJ Heely held a supplemental hearing on May 21, 2003, in Stockton, California. AR 277. Plaintiff appeared with his attorney, Gina Fazio. AR 277.

Plaintiff testified that since his last hearing in August 2002, the pain in his arms and neck is getting worse. AR 281. Getting his arms up high enough to shave and comb his hair is extremely painful. AR 282. He also has numbness and pain in his hands. AR 284. The phone sometimes slips out of his hands. AR 284.

His medications cause dizziness, confusion, and an upset stomach. AR 283. He still has problems with concentration and can't remember anything. AR 283-284.

<u>Medical Record</u>

In April 1998, Plaintiff fell while drunk and sustained a neck injury. AR 142-148. Upon discharge from the hospital, he was diagnosed with cervical stenosis, C2 through C5 and central spinal cord injury with transient quadriparesis, resolved, C5 root injury, resolving, C1-2 segmentation anomaly with congenital fusion of C2-3, chronic alcoholism and chronic obstructive pulmonary disease secondary to tobacco use. AR 139-140.

In May and June 1998, Plaintiff continued to improve. AR 131-135. By September 1998, Michael L. Griffith, M.D., indicated that Plaintiff had made "nice improvement" and his exam looked good. AR 129. He diagnosed spinal stenosis and indicated that if Plaintiff avoided future falls and alcohol use, he should not have any difficulty for many years. AR 129. Plaintiff told Dr. Griffith that he had been working as a carpenter and Dr. Griffith explained that he should

avoid climbing and overhead work, as well as any roofing type work so as to prevent another fall. AR 129.

On May 13, 1999, Dikran Bairamian, M.D., completed a form and indicated that Plaintiff was permanently disabled and could not work outside because he complained of constant pain. AR 165.

On May 19, 2000, Plaintiff was examined by Dan Cox, P.A. AR 163. Mr. Cox completed a form that indicated that Plaintiff was permanently disabled due to spinal stenosis and radiculopathy and could not work full or part time. AR 164.

On November 14, 2000, Plaintiff's pain medication was changed from Vicodin to OxyContin because he indicated that the medication was not providing relief. AR 160. On November 28, 2000, Plaintiff saw John Castro, M.D. AR 159. He complained of neck pain, but indicated that he was helped by the OxyContin and had a much better quality of life. AR 159.

On April 9, 2001, Dan Cox, P.A., completed a form indicating that Plaintiff was permanently disabled due to cervical stenosis and could not work full or part time. AR 153.

On June 29, 2001, Plaintiff was examined by Lakshmi Neena Madireddi, M.D. AR 149-150. He complained of pain in his neck and shoulders, and an aching pain in both arms with loss of strength. AR 149. Upon examination, Plaintiff had decreased range of motion in his cervical spine with stiffness, tenderness to palpation of the cervical paravertebral muscles and scapular musculature bilaterally. AR 149. He had full range of motion of shoulders, elbows, wrists and fingers, but had discomfort with raising his arms up above his head. AR 149. Dr. Madireddi opined that Plaintiff should not balance along unprotected heights, and should avoid repetitive pushing, pulling, reaching, crawling and stooping activities. AR 150. He could stand, walk and sit for six hours in a full workday and lift and carry no more than 15 pounds on an intermittent basis. AR 150.

On July 18, 2001, State Agency physician George A. Jansen, Sr., M.D., completed a Physical Residual Functional Capacity Assessment. AR 166. He indicated that Plaintiff could lift 15 pounds occasionally and 10 pounds frequently, could stand/walk at least two hours in an eight hour workday, could sit about six hours in an eight hour workday, and was unlimited in

pushing and pulling. AR 167. He could never climbs ladders, etc., balance, kneel, crouch or crawl, but could occasionally climb ramps/stairs and stoop. AR 168. He could not perform overhead work, reaching or lifting, and could not perform repetitive gripping, grasping or torquing with the upper extremities. AR 169. He had to avoid all exposure to hazards and could not climb or drive. AR 170.

In August 2001, Plaintiff saw Mr. Cox. AR 152. Although he complained of chronic neck pain, he admitted that he was able to move around the house and that his pain was better controlled. AR 152.

In September 2001, a State Agency physician opined that Plaintiff could occasionally lift and carry 10 pounds, less than 10 pounds frequently, could stand/walk at least two hours in an eight hour workday, could sit about six hours in an eight hour workday, and could not perform frequent pushing/pulling with the upper extremities. AR 196. He could occasionally climb, balance, stoop, kneel, crouch, and crawl. AR 197. He could not reach overhead and had to avoid concentrated exposure to hazards. AR 198-199.

On September 4, 2001, Plaintiff was examined by Gregory Fields, Ph.D. AR 174. He indicated that he was independent in basic activities of daily living, but that these activities took him a long time to complete. AR 175. He had no difficulty walking, but complained of severe pain in his neck and arms, and at times pain in his legs. He said he had become depressed and withdrawn, had difficulty concentrating and took an antidepressant to help him sleep. He did not drive, use public transportation, shop, do household chores, exercise or visit friends. After a mental status examination, Dr. Fields diagnosed alcohol abuse/dependence, in full remission by self report, depressive disorder not otherwise specified, and mixed anxiety and depressive disorder. AR 176. Dr. Fields opined that Plaintiff's ability to deal with the public, supervisors and co-workers was moderately limited. He would have no difficulty with straight forward one and two step tasks. AR 176.

On September 18, 2001, a State Agency physician opined that Plaintiff's mental functional limitations were not significant, but he was moderately limited in his ability to interact with the public, supervisors and co-workers. AR 179-180.

5

On September 28, 2001, Plaintiff saw Mr. Cox and complained of neck pain and burning pain in his shoulders. AR 237. He had pain on range of motion of the cervical spine and pain on shoulder shrug. AR 237.

Plaintiff underwent a CT of the cervical spine on October 30, 2001. AR 236. The exam revealed degenerative changes of the upper cervical spine, narrowed right C2-3 intervertebral foramen, and borderline spinal stenosis at the level of C3. AR 236.

In November 2001, Plaintiff complained of depression and was prescribed Zoloft. AR 235.

In December 2001, Mr. Cox completed a medical assessment form indicating that Plaintiff could frequently lift/carry up to 10 pounds, up to 20 pounds occasionally, and had no standing, walking or sitting restrictions. AR 221. He could frequently reach, handle and feel, and could occasionally push/pull. AR 222. Mr. Cox indicated that although Plaintiff complained of numbness, his tests were normal. AR 222.

In February 2002, Plaintiff's medication regime was continued. AR 231.

In July 2002, Plaintiff reported that he was still experiencing considerable neck pain and that he had another SSI hearing coming up. AR 229. Mr. Cox noted that he would write a note to the judge indicating that Plaintiff was permanently disabled. AR 229.

In August 2002, a form signed by Mr. Cox and Dr. Castro indicated that Plaintiff was precluded from performing work at any exertional level due to stenosis of the cervical spine. AR 242. He could sit, stand or walk no more than one to two hours in an eight hour period. AR 242. He could not lift more than 10 pounds or do overhead work. AR 242. His pain medication could interfere with his concentration. AR 242. They indicated that these restrictions have existed since August 1999. AR 242.

On April 29, 2003, Plaintiff was examined by neurologist Dikran Bairamian, M.D. AR 244. He complained of neck pain and bilateral upper extremity pain and numbness with decreased dexterity. AR 244. Upon examination, Plaintiff was in no acute distress, but had limited neck movement in all directions. His upper and lower extremities had reduced sensation to pin prick, but he had full range of motion. AR 245.

1    Plaintiff returned to Dr. Bairamian on June 3, 2003.  AR 252.  He diagnosed
2 neck/bilateral upper extremity pain and indicated that if his arm pain was severe and he could not
3 live with his symptoms, surgery may be a possibility.  AR 252.
4    ALJ's Finding
5    The ALJ first explained that Plaintiff's previous application was denied on November 15,
6 1999.  AR 13.  The ALJ found that Plaintiff had presented changed circumstances and that new
7 and material evidence indicated that Plaintiff's condition had worsened since the date of the prior
8 decision.  AR 13.  Although the ALJ did not apply res judicata, he determined that the period
9 before November 15, 2000, was administratively final.  AR 14.
10    The ALJ found that Plaintiff had the severe impairments of degenerative disc disease and
11 an affective disorder, not otherwise specified.  AR 15.  He further found that Plaintiff's
12 allegations were not entirely credible.  AR 16.  He determined that Plaintiff retained the residual
13 functional capacity ("RFC") to sit for six hours and stand or walk for two hours each in an eight
14 hour workday and to lift/carry ten pounds occasionally or frequently.  AR 20.  He could not
15 climb, stoop, kneel, crouch or crawl.  AR 20.  As for his mental condition, the ALJ determined
16 that he retained the combination of understanding and memory, sustained concentration and
17 persistence, social interaction and adaptation of skills necessary to engage in substantial gainful
18 activity.  AR 20.  Based on this RFC, the ALJ applied Medical-Vocational Rule 201.18 to find
19 Plaintiff not disabled.  AR 23.

## SCOPE OF REVIEW

21    Congress has provided a limited scope of judicial review of the Commissioner's decision
22 to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,
23 the Court must determine whether the decision of the Commissioner is supported by substantial
24 evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla,"
25 *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*
26 *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a
27 reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at
28 401.  The record as a whole must be considered, weighing both the evidence that supports and

the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[5] Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of disability; (2) has an impairment or a combination of impairments that is considered "severe" (degenerative disc disease and an affective disorder, not otherwise specified) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) cannot perform his past relevant work; (5) but retains the RFC to perform a significant number of jobs in the national economy. AR 22-23.

---

[5] All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

8

Plaintiff argues that the ALJ (1) mechanically applied the Medical-Vocational Guidelines; (2) wrongly rejected the treating doctors' opinions and consequently erred in the RFC determination; (3) failed to use a vocational expert ("VE"); and (4) did not properly review the testimony.

## DISCUSSION

A.  Application of Medical-Vocational Guidelines

Plaintiff argues that the ALJ improperly "mechanically" applied the Medical-Vocational Guidelines ("Grids") by not considering approving the case with a later onset date. Plaintiff contends that the ALJ should have approved the case with an onset date of May 29, 2003, six months before Plaintiff's 50th birthday and almost three months before the ALJ's decision was issued.

The regulations provide that age categories should not be applied mechanically. *Calvin v. Heckler*, 782 F.2d 802, 805 (9th Cir.1986). If a claimant is "within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that [the claimant is] disabled, the ALJ will consider whether to use the older age category after evaluating the overall impact of all the factors of [the claimant's] case." 20 C.F.R. § 416.963(b). There are no fixed guidelines as to when a borderline situation exists, as such guidelines "would themselves reflect a mechanical approach." SSR 83-10.

Plaintiff was born in November 1953. AR 91. He was forty-seven and five months old at the time of his alleged onset date, forty-nine and six months old at the time of the administrative hearing, and forty-nine and nine months old at the time of the ALJ's decision. AR 97, 23. The ALJ determined that Plaintiff, at 49 years old, was a "younger individual between the ages of 45 and 49" pursuant to the regulations. AR 20. He did, however, note Plaintiff's approaching 50th birthday:

> The undersigned notes that the claimant is approaching his 50th birthday. He may be eligible for supplemental security income as of that date pursuant to Medical Vocational Rule 201.12. The undersigned notes that the claimant may reapply for supplemental security income near the date of his 50th birthday if he feels that his condition continues to cause severe limitations.

AR 23.

At the time of the ALJ's decision, Plaintiff was more than three months away from his 50th birthday. *Russell v. Bowen*, 856 F.2d 81, 83 (9th Cir. 1988). Even assuming this is a borderline situation, the Grids do not require that the next age category be automatically adopted. *See id.* (determining that claimant's case was not borderline where he was more than a few days short of the cut-off date, and was in fact closer to age 59 than to age 60 at the time of the ALJ's decision). Instead, where a borderline situation exists, the ALJ must *consider* whether to use the older age category. Here, after evaluating Plaintiff's case, the ALJ acknowledged that a borderline situation might exist but decided not to place Plaintiff into the higher age category. The ALJ explained that if Plaintiff's condition continued to cause severe limitations near the date of his 50th birthday, he could reapply. This was not an abuse of the Commissioner's discretion. *See Underwood v. Bowen*, 828 F.2d 1081, 1082-1083 (5th Cir. 1987) (recognizing that the Secretary is vested with considerable discretion in determining which age category to place a claimant).

B.   Treating Physician Opinion

Next, Plaintiff argues that the ALJ improperly rejected the opinions of treating physician Dr. Castro and Mr. Cox, his medical assistant.

It is true that the medical opinion of a claimant's treating physician is entitled to "special weight." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988); *Valencia v. Heckler*, 751 F.2d 1082, 1088 (9th Cir. 1985). Reliance on the opinion of the treating physician is based not only on the fact that he is employed to cure but also on his greater opportunity to observe and know the patient as an individual. However, a treating physician's opinion is not conclusive as to a physical condition or the ultimate issue of disability. *Magallanes*, 881 F.2d at 751, and *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). An ALJ may reject a contradicted treating physician's opinion on the basis of clear findings that set out specific, legitimate, reasons for the rejection. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

In the instant case, the ALJ thoroughly reviewed the opinions of Dr. Castro and Mr. Cox, including the December 21, 2001, assessment indicating that Plaintiff could frequently lift/carry up to 10 pounds, up to 20 pounds occasionally, had no standing, walking or sitting restrictions,

and could frequently reach, handle and feel, and could occasionally push/pull. AR 221-222. The ALJ also reviewed the August 2002 assessment that imposed more restrictive limitations. In their opinion, Plaintiff was precluded from performing work at any exertional level due to stenosis of the cervical spine. AR 242. He could sit, stand or walk no more than one to two hours in an eight hour period. AR 242. He could not lift more than 10 pounds or perform overhead work. AR 242. His pain medication could interfere with his concentration. AR 242. They indicated that these restrictions have existed since August 1999. AR 242.

In rejecting the August 2002 opinion, the ALJ first noted the stark contrast between the two reports, which were prepared less than eight months apart. The ALJ explained that the opinion changed without a change in the objective evidence as justification. Indeed, the medical records for the period between the two reports indicate that although Plaintiff continued to complain of neck pain, there was nothing substantially different about his examinations. AR 229-233. A lack of supporting clinical findings is a valid reason for rejecting a treating physician's opinion. *Magallenes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ also noted that the two reports were inconsistent, as the August 2002 report purports to cover the period included in the December 2001 report by indicating that the limitations existed since August 1999. AR 17.

Based on the inconsistency between the two reports, the ALJ concluded that the more restrictive August 2002 report was based on Plaintiff's subjective complaints and that medical providers were acting as advocates on Plaintiff's behalf. The progress note for the visit before the completion of the August 2002 assessment reveals that Plaintiff told Mr. Cox that he had another SSI hearing in four weeks and Mr. Cox indicated that the would prepare a "note to SSI judge that pt is permanently disabled." AR 229. Given the increase in Plaintiff's restrictions described in the August 2002 assessment without a corresponding increase in objective findings, it was reasonable for the ALJ to conclude that Dr. Castro and Mr. Cox were advocating on behalf of Plaintiff. *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (an ALJ is entitled to draw inferences logically flowing from the evidence); *Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992) (it was proper for the ALJ to give less weight to the opinion of a physician who

seemed to be acting as an advocate for claimant or who relied too heavily on claimant's complaints).

Finally, the ALJ noted that the opinion was expressed in a checklist without a significant explanation of the objective basis of the conclusions. AR 17. *Magallenes,* 881 F.2d at 751.

In connection with this argument, Plaintiff also contends that the ALJ ignored the State Agency physician's opinion regarding Plaintiff's arm and hand limitations and wrongly rejected the 1999 report of Dr. Bairamian. However, contrary to Plaintiff's assertion, the ALJ did review the July 2001 upper extremity limitations (no overhead work, reaching or lifting, and no repetitive firm gripping, grasping or torquing) but concluded that they were not adequately justified by the treatment records or other objective evidence. AR 18. Indeed, the upper extremity limitations were far more restrictive than limitations imposed by Plaintiff's treating physician's limitations and the consultive examiner.

Plaintiff's argument regarding the rejection of Dr. Bairamian's May 1999 report is also without merit. The ALJ explained that he gave less weight to records dated prior to November 15, 2000, as he determined that the period before that date was administratively final. AR 20. Plaintiff contends that this was in error because the report was not considered in the November 2000 decision. A review of that decision reveals that Plaintiff is mistaken. The prior ALJ thoroughly review treatment records from Dr. Bairamian, including the May 1999 assessment. AR 35-36, 38-39. Moreover, the ALJ reviewed Dr. Bairamian's recent reports of April and June 2003. AR 16-17.

C.     Vocational Expert

Plaintiff contends that the ALJ failed to use a vocational expert ("VE") based on the "numerous additional nonexertional and mental limitations not in the ALJ's RFC." Opening Brief, at 5. Even based on the ALJ's RFC, Plaintiff argues that a VE was required due to the compromise in Plaintiff's ability to do a full range of sedentary work.

In general, where a claimant suffers only from exertional limitations, the ALJ may apply the Grids at step five to match the claimant with the appropriate work. *Reddick v. Chater*, 157 F.3d 715, 729 (9th Cir. 1998). The ALJ may apply the Grids in lieu of taking VE testimony only

when the Grids accurately and completely describe the claimant's abilities and limitations. *Id.* (citing *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985)). If a claimant's non-exertional limitations "significantly limit the range of work" he can perform, mechanical application of the grids is inappropriate and a VE would be needed to describe what, if any, jobs existed in the national economy that the claimant could perform. *Desrosiers v. Secretary of Housing and Health Services*, 846 F.2d 573, 577 (9th Cir. 1988). The determination of whether a non-exertional limitation significantly limits the range of work the claimant is able to perform is left to the ALJ. *Id.*

The ALJ determined that Plaintiff could perform the exertional requirements of sedentary work, but could not climb, stoop, crouch or crawl, and had the mental ability to perform simple work. AR 20. Although the ALJ undertook a lengthy explanation of why these postural limitations did not significantly erode the sedentary occupational base by quoting portions of SSR 85-15, his RFC finding precludes such a conclusion. While a restriction in climbing, crouching or crawling may not have a significant impact on the sedentary occupational base, a complete inability to stoop will significantly impact the positions available. Indeed, the ALJ himself explains that some stooping is required in almost any kind of work. SSR 96-9p provides:

> An ability to stoop occasionally; i.e., from very little up to one-third of the time, is required in most unskilled sedentary occupations. A complete inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply, but restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work. Consultation with a vocational resource may be particularly useful for cases where the individual is limited to less than occasional stooping.

Plaintiff's inability to stoop, therefore, significantly erodes the occupational base so that the testimony of a VE is required. Section 405(g) of Title 42 of the United States Code provides: "the court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." In social security cases, the decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be

remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal and an award of benefits is appropriate." *Id.* (citation omitted); *see also Varney v. Secretary of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir.1988) ("Generally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed.").

Although SSR 96-9p indicates that this would often result in a finding of disabled, the Court will not remand for the payment of benefits. The ALJ's RFC finding and his explanation of why the postural limitations do not significantly erode the occupational base are inherently inconsistent (i.e., a finding of a complete inability to stoop, but acknowledging that some stooping is involved in most jobs), and cause the Court to question whether the ALJ intended to preclude Plaintiff from stooping entirely. Indeed, the medical evidence does not support a finding that Plaintiff is unable to stoop. In July 2001, Dr. Madireddi indicated that Plaintiff should avoid repetitive stooping. AR 150. Likewise, in July 2001 and September 2001, two State Agency physicians indicated that Plaintiff could occasionally stoop. AR 168, 197. Accordingly, upon remand, the ALJ shall revisit his RFC finding and, if a preclusion from all stooping is again found, call a VE to determine the erosion of the occupational base. The ALJ shall also take into consideration Plaintiff's change in age status when reviewing his decision.

D.      Subjective Complaints

Finally, Plaintiff contends that the ALJ failed to properly review Plaintiff's testimony.

The ALJ is required to make specific findings assessing the credibility of plaintiff's subjective complaints. *Cequerra v. Secretary of HHS*, 933 F.2d 735 (9th Cir. 1991). In rejecting the complainant's testimony, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1996) (quoting *Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir. 1988)). Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).

-
-
-
-

"The ALJ may consider at least the following factors when weighing the claimant's credibility: '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Id.* (citing *Light v. Soc. Sec. Admin.,* 119 F.3d 789, 792 (9th Cir. 1997). "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Id.*

The ALJ found that Plaintiff's statements concerning his impairments and their impact on his ability to work were not entirely credible given "the discrepancies between the claimant's assertions and information contained in the documentary reports and the reports of the treating and examining physicians." AR 16. The ALJ first explained that although Plaintiff is on strong medication, his doctors have not tried anything else, leading to the conclusion that his pain appears to respond reasonably well to medication. AR 16. Similarly, Plaintiff's depression also responded well to medication. *See Sample v. Schweiker*, 694 F.2d 639, 643 (9th Cir. 1982). This conclusion is supported by the treatment notes, which indicate that Plaintiff's pain was better or controlled, and that his depression improved with medication. AR 152, 155, 156, 159, 235, 231-233.

The ALJ also correctly noted Mr. Cox/Dr. Castro's indication that Plaintiff's subjective complaints were not supported by the objective evidence. AR 16, 222. Although Plaintiff complained of pain and numbness, his tests were normal. AR 222. *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991). Indeed, although Plaintiff complained of being in severe pain almost constantly, the medical records indicate that he was always observed as being in no acute distress. AR 152-158, 160-163, 229-233, 235, 237, 246, 249-250. Additionally, while Plaintiff testified that he could not wash his hair, had difficulty taking care of his daily needs, and had not been to the store in over a year because it hurt to walk and move his arms back and forth, these limitations are not noted in the medical record. AR 269.

Finally, the ALJ considered the timing of Plaintiff's medical appointments. AR 16-17. In May 2002, Plaintiff indicated that he had an increase in neck pain with an electrical sensation

15

to his arms, but that the condition resolved before he could seek treatment. AR 230. Plaintiff did not return to the doctor for two months, at which time he indicated that he had another SSI hearing and Mr. Cox wrote a note to the judge that Plaintiff was permanently disabled. AR 229. Plaintiff did not return for three months, when he complained of neck pain radiating to his shoulders and needed his OxyContin refilled. AR 250. Mr. Cox recommended a TENS unit and made an illegible note about SSI. AR 250. Plaintiff did not report any extreme weakness in his hands until February 2003, but his grip strength was equal bilaterally. AR 249. Indeed, Plaintiff's neurological examination by Dr. Bairamian in April 2003 did not reveal any significant limitations. AR 244-245.

As Respondent points out, the intensity, persistence and duration of Plaintiff's complaints were not supported by the medical evidence, which included both objective evidence and Plaintiff's own statements. The ALJ's credibility analysis was sufficiently specific to permit the Court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002). "Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation ... and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision." *Fair,* 885 F.2d at 603.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is therefore REVERSED and the case is REMANDED to the ALJ for further proceedings consistent with this opinion. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Preston Allen and against Defendant Jo Anne B. Barnhart, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:    **August 29, 2005**              **/s/ Dennis L. Beck**
3b142a                                      UNITED STATES MAGISTRATE JUDGE